In re Steven Ray SNELL, Debtor.

Patrick J. Malloy, III, Plaintiff,

v.

The Cornerstone Bank, Defendant.

Bankruptcy No. 04–14329–M.
Adversary No. 04–01212–M.

United States Bankruptcy Court,
N.D. Oklahoma.

Sept. 2, 2005.

---

Patrick J. Malloy III, Malloy Law Firm, P.C., Tulsa, OK, Chapter 7 Trustee, Plaintiff.

Tommy R. Dyer, Jr., Jay, OK, for the Defendant, The Cornerstone Bank.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Chief Judge.

In this adversary proceeding, the Court is asked to determine whether the laws of the Cherokee Nation govern perfection of a lien on a motor vehicle owned by one of its citizens. Patrick J. Malloy III ("Malloy") argues that in Oklahoma, the only way to perfect a lien on a motor vehicle is to note the existence of the lien on a vehicle title created by the State of Oklahoma. The Cornerstone Bank ("Bank"), the lienholder in this case, takes issue with Malloy's position and notes that Malloy is asking for the impossible, since the title to the motor vehicle at issue was issued by the Cherokee Nation. The Cherokee Nation has weighed in on the issue, arguing

that its laws regarding lien perfection are adequate and deserve respect. All in all, a very interesting and significant issue. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Civil Procedure 52 and Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

### Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C.A. § 1334(b).[1] Reference to the Court of this contested matter is proper pursuant to 28 U.S.C.A. § 157(a). Issues relating to the validity, priority, and extent of liens are core proceedings as defined by 28 U.S.C.A. § 157(b)(2)(K).

### Findings of Fact

This case arises out of the Chapter 7 bankruptcy case of Steven Ray Snell ("Snell"). The parties have submitted the matter upon the following stipulated facts:[2]

1. Snell is a member of the Cherokee Nation.

2. The Cherokee Nation is a federally recognized Indian tribe.

3. On October 4, 2001, the Cherokee Nation adopted its Motor Vehicle Rules and Regulations. The relevant portion of those regulations read as follows:

710:60–5–111.  **Perfecting liens**

**A.  Documents required for perfecting lien.**  Before perfecting a lien, a Cherokee Nation title, boat or motor title, or an Application for Cherokee Nation Title accompanying a Manufacturer's Statement of Origin or out-

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2005). All other references to federal

statutes and rules are also to West 2005 publications.

2.  *See Docket No. 15.*

of-state, tribe, or territory title must be presented, along with a completed Lien Entry Form.

**B. Lien form to be typewritten.** All lien entry forms must be typed. No handwritten forms will be accepted.

**C. Secured party information.** The secured party must have completed his part of the form, particularly the signature and date of execution. Strikeovers and off line printing are not acceptable.

**D. Title to conform to lien entry form.** The name of the secured party will be entered on the face of the secured title exactly as it appears on the lien entry form.

**E. Title receipt reflecting lien to be issued; fees.** When recording a lien on a registered vehicle, boat or motor, used as collateral, a title receipt must be issued to reflect the lien. A title fee in addition to the lien fee will be charged.

**F. Procedure for removal of lien entry from title.** An owner may secure a new title omitting reference to a security interest by presenting the lien release and tendering payment for the new title.

**G. Certain liens not perfectible under Motor Vehicle Code.** Lien Entry Forms cannot be accepted on any vehicle that cannot be issued an [sic] Cherokee Nation Certificate of Title.[3]

4. On June 22, 2004, Snell executed and delivered to the Bank a document entitled "Note, Disclosure, and Security Agreement" (the "Agreement").

5. Pursuant to the Agreement, Snell granted the Bank a security interest in 1998 Ford Pickup Truck (the "Truck").

6. The Agreement states that it is governed by the laws of the State of Missouri, the United States of America, and, to the extent required, the laws of the jurisdiction where the Truck is located.

7. At the time Snell and the Bank entered into the Agreement, Snell did not reside on an Indian reservation, allotted land, or a dependent Indian community, nor has he so resided at any time thereafter.

8. At the time Snell and the Bank entered into the Agreement, Snell did reside within the jurisdictional area of the Cherokee Nation as described and recognized in the Tribal—State Motor Vehicle Licensing Compact dated May 15, 2002 (the "Compact"), entered into by and between the Cherokee Nation and the State of Oklahoma.

9. At the time of the execution of the Agreement, the Truck was located in Oklahoma.

10. On June 22, 2004, Bank executed a Lien Entry Form identifying the Truck (the "Lien Entry Form"). The Lien Entry Form was delivered to the Cherokee Nation Tax Commission on June 29, 2004.

11. After receipt of the Lien Entry Form, the Cherokee Nation issued a certificate of title for the Truck (the "Cherokee Title") which reflected the existence of the lien claimed by the Bank.

12. On September 30, 2003, the Cherokee Nation adopted the Uniform Commercial Code.

---

**3.** MV: 01–3–325, Motor Vehicle Rules and Regulations, Cherokee Nation Tax Commission (2001). *See Docket No. 15,* Exhibit D, p. 36.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

Malloy admits that the Bank has a security interest in the Truck. The issue before the Court is one of perfection. The Bank and the Cherokee Nation contend that the notation of a lien upon a certificate of title issued by the Cherokee Nation operates to perfect the Bank's lien. Malloy contends that such efforts are meaningless. He argues that the only way to perfect a lien on a motor vehicle in the state of Oklahoma is by having the lien noted upon a title issued by the Oklahoma Tax Commission. If Malloy is correct, every car loan made to a member of the Cherokee Nation where the vehicle title was issued by the Cherokee Nation is vulnerable to attack. Although much is at stake in this case, the legal analysis is quite simple.

There is no dispute that Snell and the Bank complied with the law of the Cherokee Nation in noting the Bank's lien upon the Cherokee Title. The question is whether these efforts to perfect a lien are valid under Oklahoma law. The Oklahoma Legislature seems to think so:

A. 1. *Except for a security interest in* vehicles held by a dealer for sale or lease, *a vehicle registered by a federally recognized Indian tribe as provided in subsection G of this section,* and a vehicle being registered in this state which was previously registered in another state and which title contains the name of a secured party on the face of the other state certificate or title, a security interest in a vehicle as to which a certificate of title may be properly issued by the Oklahoma Tax Commission shall be perfected only when a lien entry form, and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agreement and the required fee are delivered to the Tax Commission or to a motor license agent.

G. A security interest in vehicles registered by a federally recognized Indian tribe shall be deemed valid under Oklahoma law if validly perfected under the applicable tribal law and the lien is noted on the face of the tribal certificate of title.[4]

This statute was amended to provide for perfection under Indian law on April 13, 2004, and was effective on that date.[5] On May 5, 2005, the State of Oklahoma amended the Uniform Commercial Code to make it even more clear that liens perfected under Indian law are valid for all purposes:

(a) Except as otherwise provided in subsection (d) of this section, the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to:

\*     \*     \*     \*     \*     \*

(4) the law or procedure of a federally recognized Indian tribe, if the security interest is in a vehicle registered or to be registered by the federally recognized Indian tribe and if within thirty (30) days after the security interest attaches, it is noted on the face of a certificate of title issued by the Indian

---

4. Okla. Stat. Ann. tit. 47, § 1110(A)(1) and (G) (West 2005) (emphasis added) (hereafter "§ 1110").

5. 2004 Okla. Sess. Laws Ch. 85 § 2 (HB 2230).

tribe or, notwithstanding subsection G of Section 1110 of Title 47 of the Oklahoma Statutes, the security interest is otherwise perfected under an applicable law or procedure of that tribe.[6]

While this amendment became effective immediately upon passage, it is not applicable to the case at bar. However, the statute stands as strong evidence of the intent of Oklahoma's lawmakers to recognize liens validly perfected under Indian laws such as those adopted by the Cherokee Nation.

The parties have stipulated that the Cherokee Nation is a validly recognized Indian tribe, and that Snell resided within the jurisdictional area of the Cherokee Nation as described and recognized in the Compact. Snell and the Bank entered into their transaction on June 22, 2004, well after the effective date of the amendments to § 1110. If the amendments to § 1110 are valid, the lien held by the Bank upon the Truck, validly perfected under the laws of the Cherokee Nation, is valid under the laws of the State of Oklahoma and not subject to attack by Malloy.[7] The argument is compelling.[8]

In response, Malloy argues that the interpretation of the Cherokee and Oklahoma laws advanced by the Bank and the Cherokee Nation is unconstitutional. Malloy contends that, at most, the Cherokee laws regarding lien perfection can apply only when the member of the Cherokee Nation resides on tribally owned land. Therefore, when a vehicle is owned by a member of the Cherokee Nation who does not reside on tribally owned land, the vehicle must be titled with the State of Oklahoma, with the resulting issuance of an Oklahoma certificate of title, in order for a creditor to properly perfect a lien. Any other result, according to Malloy, violates the Supremacy Clause of the United States Constitution.

Malloy premises his argument upon a single case, *Oklahoma Tax Commission v. Sac and Fox Nation*.[9] He contends that this case "stands for the clear proposition that Indian Nation titles may only be issued to members of the Indian Nation who are residing on Indian land as defined by federal law."[10] Malloy did not cite to any particular portion of the *Sac and Fox* decision to support his bold statement. This Court has read and re-read the decision in hopes of finding the revelation relied upon by Malloy, but has failed to do so.

The *Sac and Fox* decision had nothing to do with lien perfection. Instead, the case dealt with the jurisdiction of a state over members of an Indian tribe. In that case, the Oklahoma Tax Commission (the "OTC") took the position that a title must be issued by the OTC for *all* motor vehicles located in the state of Oklahoma. The

---

6. Okla. Stat. Ann. tit. 12A, § 1–9–311 (West 2005).

7. The parties have spent considerable time in their briefs arguing the merits of the Uniform Commercial Code as adopted by Oklahoma and the Cherokee Nation. Given the Court's focus on § 1110, a detailed discussion of the Uniform Commercial Code is not necessary in this case.

8. The Court is aware that Professor Alvin C. Harrell, in a recent article, has argued that the amendments to § 1110 were superfluous.

*See* Alvin C. Harrell, *Can a Buyer and Secured Party Rely on a Certificate of Title? Part II*, 76 Okla. B.J. 447 (2005). While the position advanced by Professor Harrell is an interesting one, the Court believes that the better path for it to follow is to recognize and respect the intent of the Oklahoma legislature.

9. 508 U.S. 114, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993).

10. *Plaintiff/Trustee's Reply Brief in Support of Motion for Judgment*, Docket No. 20, p. 2.

Sac and Fox Nation issued vehicle titles to members of the tribe who resided on tribal land. The OTC took the position that these vehicles were not legally titled, but took no action with respect to the deficiency unless and until a member of the Sac and Fox Nation sold a vehicle to a non-tribal member. When this occurred, the OTC required the new owner of the vehicle to pay all past due excise taxes, registration fees for the current year, and the fees and penalties due for the prior year in order to obtain an Oklahoma title for the vehicle. The Sac and Fox Nation filed suit seeking to permanently enjoin this practice, and to enjoin the OTC from collecting income taxes from anyone who earned their income from businesses located upon tribal territory.[11]

Upon cross motions for summary judgment, the district court held that while the OTC could not tax either the income or the vehicles of members of the Sac and Fox Nation who worked on tribal "trust lands," no such restriction applied to non-members of the tribe who either had vehicles titled by the Sac and Fox Nation or earned all of their income upon tribal trust lands.[12] The district court also ruled that the OTC could not require non-tribal members to pay registration fees and penalties on vehicles for years when the vehicle had been licensed by the Sac and Fox Nation. The United States Court of Appeals for the Tenth Circuit affirmed. Both parties appealed to the United States Supreme Court.

The United States Supreme Court, in a unanimous decision, reversed the decision of the Court of Appeals. The Supreme Court ruled that the OTC could not levy an income tax or a tax upon motor vehicles owned by members of the Sac and Fox Nation when "the relevant tribal members live in Indian country—whether the land is within reservation boundaries, on allotted lands, or in dependent communities."[13] The Supreme Court recognized the right of the Indian tribes to govern themselves in this area of taxation. The case was remanded for a factual determination of whether the tribe members lived in Indian country.

While the Sac and Fox decision may have limited the taxing ability of the State of Oklahoma when it comes to Indian nations, it did nothing to limit the ability of the State of Oklahoma to recognize the laws of Indian nations regarding lien perfection. Indeed, the issue of lien perfection is nowhere to be found in the Sac and Fox decision. This Court sees no restriction, constitutional or otherwise, upon the ability of the State of Oklahoma to respect the laws of the Cherokee Nation when it comes to lien perfection. To the extent the Sac and Fox decision supports the right of Indian nations to govern themselves, and the supremacy of such rights over the rights of a state to tax members of Indian nations, Sac and Fox seems to undermine, rather than support, Malloy's position.

Moreover, the judicial winds do not seem to be blowing in Malloy's favor. In a recent decision, the United States Court of Appeals for the Tenth Circuit upheld a district court order enjoining the State of Kansas from refusing to recognize the motor vehicle registration laws of the Prairie Band Potawatomi Nation.[14] In so ruling, the circuit court noted the interests of the tribe and the federal government in "pro-

---

11. 508 U.S at 120, 113 S.Ct. 1985.

12. *Id.* at 121, 113 S.Ct. 1985.

13. *Id.* at 126, 113 S.Ct. 1985.

14. *Prairie Band Potawatomi Nation v. Wagnon,* 402 F.3d 1015 (10th Cir.2005).

moting strong tribal economic development, self-sufficiency, and self-governance."[15] Given the existence of binding precedent forcing a state to recognize the laws of an Indian nation, it is difficult for this Court to find fault (let alone constitutional flaw) in the laws of the State of Oklahoma which voluntarily recognize the validity of the laws of the Indian nations on the issue of liens upon motor vehicles.

Finally, the practical effect of the position advanced by Malloy is not lost on the Court. If Malloy is correct, then lenders who choose to lend to members of Indian tribes cannot perfect a lien upon a motor vehicle unless they require the tribe member to register his or her vehicle with the State of Oklahoma. The tribal member will be forced to choose between loyalty to his or her tribe and the ability to obtain financing. Such a ruling would be directly contrary to the intent of the Oklahoma Legislature when it amended § 1110. It would serve no real purpose; liens noted upon titles issued by the Cherokee Nation are just as apparent as those on titles issued by the OTC. The primary beneficiary of Malloy's position would be unsecured creditors in bankruptcy cases, who could demand that the debtor-in-possession or bankruptcy trustee aggressively avoid purchase money security interests so that they might receive a dividend. When a creditor, such as the Bank in this case, has followed the law to the letter, such a result seems grossly inequitable.

## Conclusion

The laws of the Cherokee Nation regarding the issuance of vehicle titles and the notations of liens thereon, and § 1110, are valid and constitutional. Bank holds a properly perfected lien upon the Truck, which Malloy may not avoid. This adversary proceeding is dismissed with prejudice. A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.